UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
EDITH FUOG,                    )
                               )
      Plaintiff,               )
                               )
           v.                  )    C.A. No. 20-337 WES
                               )
CVS PHARMACY, INC., et al.     )
                               )
      Defendants.              )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

     In this putative class action, Plaintiff alleges three counts
against Defendants CVS Pharmacy, Inc. and Caremark PHC, L.L.C.
("CVS"):  first, unlawful discrimination under Title III of the
Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(a);
second, unlawful discrimination under the Rehabilitation Act, 29
U.S.C. § 794(a); and third, unlawful discrimination under the
Affordable Care Act ("ACA"), 42 U.S.C. § 18116(a).  See generally
Compl., ECF No. 6.  She seeks to assert these claims on behalf of
herself and a class that includes, with certain limitations, all
United States residents who:  1) were issued prescriptions for
opioid medication for chronic pain, pain associated with a cancer
diagnosis or treatment, palliative or nursing home care, or sickle
cell anemia; and 2) were unable to get their prescriptions filled,
filled as written, or filled without also submitting non-opioid

prescriptions or purchasing other products.  Id. ¶ 14.  Before the Court is Defendants' Motion to Dismiss, ECF No. 21, for lack of standing and failure to state a claim.  For the reasons explained below, Defendants' Motion is GRANTED.

I.   BACKGROUND

Plaintiff suffers from chronic pain after recovering from, inter alia, breast cancer and a rare bacterial infection.  Compl. ¶¶ 58-63.  She has been treated by a physician since 2013 and has been prescribed prescription opioid medications since 2014.  Id. ¶¶ 64-65.  Starting in 2017, pharmacists at multiple CVS locations in Florida refused to fill her opioid prescriptions, sometimes telling her that her opioid prescriptions could not be filled, or that the medication was not in stock.  Id. ¶¶ 66-70.  At one point, a pharmacist allegedly yelled at her in front of other customers while refusing to fulfill her prescriptions.  Id. ¶ 68.

Plaintiff contends that CVS has recently implemented a series of policies and practices "to comply with federal mandates and the CDC Guideline for opioid prescriptions."  Id. ¶ 49.  Though she has not seen such policies, she contends that CVS uses "internal checklists, databases and data analytics to screen opioid prescriptions."  Id.  She claims that these policies have resulted in Plaintiff and others being "flagged or otherwise included on a list or database as potentially abusing opioid medication," id. ¶ 78, and that CVS or CVS pharmacists require "that opioid

prescriptions not be filled unless accompanied with one or more prescriptions for non-opioid medication," id. ¶ 50.  She also claims that CVS or CVS pharmacists have adopted or may adopt a requirement "that opioid prescriptions not be filled unless and until the person seeking the prescription provide[s] comprehensive medical records."  Id. ¶ 51.  Finally, she alleges that CVS has a policy which limits the dosage and duration of opioid prescriptions that it will fill.  Id. ¶ 49.  Plaintiff contends that her difficulties getting CVS to fill her prescriptions stem from these polices and that they amount to discrimination under the ADA and related statutes.  Id. ¶¶ 78-79.

II.  LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In examining whether a plaintiff is entitled to relief, the Court must indulge all reasonable inferences in the plaintiff's favor.  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  "[L]ables and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient, Twombly, 550 U.S. at 555, as are "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements," Iqbal, 556 U.S. at 678.

III. DISCUSSION

    A.  Standing

    Defendants first contest Plaintiff's standing, asserting that some of CVS's alleged policies were never applied to her.  They claim Plaintiff never "allege[d] that a pharmacist refused to fill an opioid prescription because she did not also present a prescription for non-opioid medication[,]" Mot. to Dismiss at 7-8 (citing Compl. ¶¶ 66-70), and that no "CVS pharmacist ever requested that Ms. Fuog provide medical records or refused to fill her opioid prescriptions because she did not provide them," id. (citing Compl. ¶ 51).

    A plaintiff "need not have personally encountered all the barriers that impede . . . access" to "seek an injunction to remove those barriers." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 951 (9th Cir. 2011) ("If [a plaintiff] has standing to pursue injunctive relief as to some of the barriers that he actually encountered, then he has standing to seek an order requiring the removal of all barriers . . . that are related to his disability and that he is likely to encounter [in the] future"). A plaintiff must have "become aware of discriminatory conditions existing at a public accommodation [that] thereby deter[s him or her] from visiting or patronizing that accommodation." Pickern v. Holiday

Quality Foods, Inc., 293 F.3d 1133, 1136-37 (9th Cir. 2002); Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000); Access Living of Metro. Chicago v. Uber Techs., Inc., 351 F. Supp. 3d 1141, 1150 (N.D. Ill. 2018), aff'd, 958 F.3d 604 (7th Cir. 2020) ("[Plaintiffs] did not have to download the app and request an Uber ride to be injured.  They saw the app, learned of the lack of wheelchair-accessible rides, and want to use the app in the future but reasonably believe they cannot.  That is sufficient.").

Here, CVS pharmacists refused to fulfill Plaintiff's prescriptions on multiple occasions and in various CVS locations. Taking the facts pled by Plaintiff as true, CVS' own pharmacists repeatedly refused to fulfill her prescriptions while referencing changed policies, lack of stock, and various other reasons.[1] Defendants' attempt to distinguish Plaintiff's experiences from

---

[1] See Compl. ¶ 66 ("When Ms. Fuog inquired as to the reason [why CVS Store #7937 could not fill her opioid prescription], she was told that since the 2016 CDC guidelines were released, CVS was changing their policy concerning fil[l]ing opioid prescriptions . . . Many times thereafter [when she tried to fulfill prescriptions at that location [she was told] 'they did not have [her opioid prescriptions] in stock.'"); Id. ¶ 67 (after visiting another location in Sun City, Florida, Plaintiff was "initially told CVS would not fill her prescription and on later visits told that the medicine was not in stock."); Id. ¶ 68 (after visiting a Miami, Florida CVS location, the pharmacist "screamed and yelled at her" and told her "the pharmacist wasn't comfortable filling her opioid medications, but . . . never explained the reasons for being 'uncomfortable' and suggested that [Plaintiff] try a CVS pharmacy in Cutler Bay, Florida[.]").  On another occasion in June 2018, a CVS pharmacist "refused to fill her opioid prescriptions or to discuss the issue with her doctor but advised that the store would be happy to fill all her other medications." Id. ¶ 69.

these policies is unpersuasive. Plaintiff has encountered significant barriers impeding her access, and so she has standing on this basis. See Chapman, 631 F.3d at 951.

Defendants also argue that Plaintiff's claims against Caremark PHC, L.L.C. ("Caremark PHC"), which provides prescription benefit management services, should be dismissed because the Complaint contains no factual allegations that specifically involved Caremark PHC. Mot. to Dismiss 9. Pharmacy benefit managers ("PBMs") are "private businesses that contract with health plan sponsors – e.g., employers, unions, trusts, and government agencies – to help administer the prescription drug benefits that health plan sponsors provide to their members." Id. But, as Plaintiff points out, CVS' own website notes Caremark PHC's involvement in CVS' efforts to prevent opioid abuse. See Opp'n to Mot. to Dismiss 33, ECF No. 25-1 ("Our ongoing opioid abuse preventing efforts and enterprise initiatives are supported by all parts of the company – including . . . CVS Caremark, our PBM that manages medications for more than 100 million plan members . . ." (quoting https://cvshealth.com/social-responsibility/our-opiod-response)). Further, she alleges that beginning in January 2019, her insurance company stopped paying for her prescription opioid medication. Id. (citing Compl. ¶ 73). There is therefore a sufficient link between Caremark PHC and CVS to find standing as to Caremark.

B.   Failure to State a Claim

   i.   Discrimination on the Basis of Disability

To demonstrate a prima facie case of disability discrimination under the ADA or the Rehabilitation Act[2], a plaintiff must show first, that "she is disabled within the meaning of the ADA"; second, "the defendant is a private entity that owns, leases, or operates a place of public accommodation"; and third, "the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).  Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

Claims that fall under "both the ADA and the Rehabilitation Act require [the plaintiff] to prove that (1) he has a disability as defined by the statutes, (2) he was 'otherwise qualified' for the program, (3) the statutes apply to the [entity engaging in the discrimination], and (4) that [the entity] discriminated against him as an individual with a disability (for example, failing to

---

[2] The language of the ADA and the Rehabilitation Act, as it applies here, is nearly identical, and therefore this Court does not make a distinction between the two statutes for the purposes of this order.  See Nunes v. Massachusetts Dept. of Correction, 766 F.3d 136, 144 (1st Cir. 2014).  Further, Section 1557 of the ACA incorporates the relevant section of the Rehabilitation Act.

provide a reasonable accommodation." Driscoll v. Bryant University, 393 F.Supp.3d 153, 159 (D.R.I. 2019).

For their part, CVS Defendants argue that not all those who have been prescribed opioids are disabled within the meaning of the ADA. Thus, the policies described in the Complaint are facially neutral, applying to the disabled and non-disabled alike. Mot. to Dismiss at 14.

In response, Plaintiff contends that "all users of prescription opioid medication are 'disabled' within the meaning of the ADA, RA[,] and ACA[,]" Opp'n to Mot. to Dismiss 9, because "their pain condition renders them disabled or because those seeking opioids for pain conditions 'may be regarded' as disabled within the meaning of the statute," id. at 12.

Plaintiff's argument fails. Of course, many people with chronic pain who need prescription opioid medication are disabled, as many courts have found. See Anderson-Posey v. Unum Life Ins. Co., 2016 WL 5955902, at *2 (N.D. Okla. 2016) (holding that plaintiff who had chronic pain and required opioids for management of pain had stated a claim of disability discrimination under the ADA); Bergman v. Kids by the Bunch Too, Ltd., 2016 WL 4991549, at *5 (E.D.N.Y. 2016), vacated on other grounds, 2018 WL 1401324 (E.D.N.Y. 2018) (allegations of chronic back pain sufficiently alleged disability under the ADA); Jordan v. Sears Logistical Services, Inc., 2004 WL 7338077, at *3-4 (D.N.M. 2004) (allegations

of chronic pain sufficient for disability under the ADA).  At the same time, "[t]he law is clear: chronic pain, alone, is not enough to create a disability."  Smith v. Walgreens Boots Alliance, Inc., No. 20-cv-05451-CRB, 2021 WL 391308, at *5 (N.D. Cal., Feb. 3, 2021) (and cases cited).  See, e.g., Hale v. King, 642 F.3d 492, 501 (5th Cir. 2011) ("[P]laintiff with 'chronic back pain' not disabled under ADA where 'the complaint argued that [plaintiff's] conditions require that he receive certain prescriptions and treatments . . . ' but 'did not contain facts regarding the impact of [plaintiff's] ailments on his ability to perform major life activities."); Gaines v. Diaz, 2014 WL 4960794, at *6 (E.D. Cal. Oct. 1, 2014); Bain v. Transcor Am., LLC, 2009 WL 562586, at *5 (M.D. Tenn. Mar. 5, 2009).  Therefore, not all of those with chronic pain are disabled within the meaning of the ADA.

If chronic pain patients are not per se disabled, Plaintiff's argument is even further afield for acute pain patients who require opioid prescriptions.  The ADA's interpretive guidelines provide that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.  Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. pt. 1630 App., § 1630.2(j).  As these guidelines illustrate, many patients who require a prescription for opioids for a short period of time but suffer no long-term

impact to their physical health are not disabled within the meaning of the relevant statutes. See Smith, 2021 WL 391308 at *6 (determining that plaintiff had "not plausibly alleged that all patients with acute pain are substantially limited from a major life activity"); Presutti v. Felton Brush, Inc., 927 F. Supp. 545, 549 (D.N.H. 1995) ("[P]laintiff's contention that her sprain, even though temporary in nature, nonetheless constitutes a disability, as that term is used in the ADA, is without merit. [Plaintiff's] back injury, as devitalizing as it may have been, was of short or temporary duration . . . not ris[ing] to the level of a permanent disability under the ADA"); Cousins v. Howell Corp., 52 F.Supp.2d 362, 364 (D. Conn. 1999) ("[N]umerous cases have held that surgery-related absences from work and short-term working restrictions thereafter do not constitute a 'disability' under the ADA" (collecting cases)).

Because the challenged polices apply equally to disabled and non-disabled individuals, Plaintiff has not alleged any facts supporting a facial theory of intentional discrimination. See Young v. Facebook, Inc., 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (no intentional discrimination where factual allegations did not show plaintiff was treated differently "because of her disability" or that defendant "target[ed] individuals with disabilities."). Plaintiff therefore can only proceed on alternate theories: disparate impact under the meaningful access

standard, or a failure to provide a necessary and reasonable accommodation.  See Smith, 2021 WL 391308 at *4 (citations omitted).

ii.  Disparate Impact

If a policy is otherwise facially neutral, "in an appropriate case a plaintiff can claim that a [] policy, though neutral on its face, 'fall[s] more harshly on one group than another and cannot be justified by business necessity.'" Nunes v. Massachusetts Dept. of Correction, 766 F.3d 136, 145 (1st Cir. 2014) (quoting Raytheon Co v. Hernandez, 540 U.S. 44, 52 (2003)); see also Smith, 2021 WL 391308 at *7 (citing Crowder v. Kitagawa, 81 F.3d 1480, 1486 (9th Cir. 1996)) (facially neutral policies "can constitute discrimination when they 'disproportionately' deny disabled persons access to places of public accommodation 'due to' those persons' disabilities"). "'Rather than attempt to classify a type of discrimination as either 'deliberate' or 'disparate impact,' courts measure compliance with the ADA and Rehabilitation Act by asking whether disabled persons were denied 'meaningful access' to public accommodations or federally financed services." Smith, 2021 WL 391308 at *8 (quoting Crowder v. Kitagawa, 81 F.3d 1480, 1484 (9th Cir. 1996)); see also Nunes, 766 F.3d at 144-45 (describing disparate impact and meaningful access theories).

The Supreme Court has "reject[ed] the boundless notion that all disparate-impact showings constitute prima facie cases [of

disability discrimination].” Alexander v. Choate, 469 U.S. 287, 299 (1985) (holding that Tennessee Medicaid recipients had not stated a claim under the Rehabilitation Act of discrimination against handicapped people based on a rule that reduced the number of inpatient hospital stays).  Other courts have reached similar conclusions since Choate.  See Doe v. BlueCross BlueShield of Tenn., Inc., 926 F.3d 235, 241 (6th Cir. 2019) (policy applicable to specialty medicines, including HIV/AIDS medicines, did not violate the Rehabilitation Act); Ruskai v. Pistole, 775 F.3d 61, 62-63, 79 (1st Cir. 2014) (holding that airport TSA pat-downs did not discriminate against disabled individuals who were more likely to set off metal detectors); Patton v. TIC United Corp., 77 F.3d 1235, 1246 (10th Cir. 1996) (“[a] facially neutral . . . restriction does not deny ‘meaningful access’ to the disabled simply because disabled persons are more likely to be affected by it.”)

Rather, courts have found denials of meaningful access when people with disabilities are “systematically excluded.”  Smith, 2021 WL 391308 at *8 (citing Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1210 (9th Cir. 2020)).  See Disabled in Action v. Bd. Of Elections in City of N.Y., 752 F.3d 189, 198-200 (2d Cir. 2014) (determining that physical barriers at approximately 80 percent of polling locations denied meaningful access to the disabled); Am. Council of the Blind v. Paulson, 525 F.3d 1256, 1259-60 (D.C. Cir.

2008) (holding that Treasury Department denied meaningful access to the blind in not printing paper currency distinguishable by touch); Crowder v. Kitagawa, 81 F.3d 1480, 1481 (9th Cir. 1996) (120-day quarantine of carnivorous animals entering Hawaii denied disabled individuals meaningful access to their service animals).

Here, the Complaint gives the Court no basis to assess or even estimate what portion of those affected by CVS's alleged policies are disabled within the meaning of the ADA.  As explained above, some number, but not all or perhaps even most of those with opioid prescriptions are disabled within the meaning of the ADA. Without some well-pleaded facts to support the degree of the disparate impact alleged, Plaintiff's meaningful access theory must fail. There may well be cases where it is difficult to draw the line between a permissibly increased likelihood that a disabled individual is affected by a facially neutral policy, Pistole, 775 F.3d at 78-79, and "systemically excluding people with disabilities," CVS Pharmacy, Inc., 982 F.3d at 1210 (citing Choate, 469 U.S. at 302.  No court can draw that line in the dark on the basis of possibility and conjecture.

For example, Plaintiff alleges that the "centerpiece" of CVS's discriminatory policies stems from "hard and fast limits on the dosage and duration of prescriptions for opioid medications." Opp'n to Mot. to Dismiss 6.  Yet the pleadings fail to describe what those limits are or how they are applied.  Assuming a high

13

correlation between the size of a prescription dose and the percentage of those who are disabled, one could imagine a dose-and-duration limitation policy set in such a way (to exclude large prescriptions) that it affected disabled individuals almost exclusively.  By the same assumption, however, a dose-and-duration policy set with low limits, would perhaps have a much more even-handed impact between the disabled and non-disabled.  These assumptions and imaginings are precisely the sort of open speculation and conjecture which is impermissible under the pleading standards of Rule 12(b)(6).  Assumptions just won't do; facts must be pleaded. Because Plaintiff has not alleged specific dose-or-duration limits, nor facts supporting the assertion that those who need prescriptions above these unknown limits are predominately disabled, her claims must fail. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

iii.  Reasonable Accommodation

Plaintiff's final theory concerns a lack of a reasonable accommodation.  In promising "the full and equal enjoyment of the goods [and] services" of privately operated public accommodations, Title III of the ADA requires "reasonable modifications" as "necessary to afford such goods [and] services . . . to individuals

with disabilities."  42 U.S.C. §§ 12182(a); 12182(b)(2)(A)(ii).
To establish a prima facie reasonable accommodation claim, a
plaintiff must show that the requested modification is both
"reasonable" and "necessary" to accommodate the plaintiff's
disability.  See PGA Tour v. Martin, 532 U.S. 661, 683 n. 38
(2001); see also Beradelli v. Allied Services Institute of
Rehabilitation Medicine, 900 F.3d 104, 115 (3d Cir. 2018).  It
must be apparent that the public entity "has refused to
affirmatively accommodate [the disabled person's] disability where
such accommodation was needed to provide 'meaningful access to a
public service.'"  Nunes, 766 F.3d at 145 (citing Henrietta D. v.
Bloomberg, 331 F.3d 261, 273-76 (2d Cir. 2003)).

    First, while Plaintiff has complained to CVS about its
policies, it is not clear that she ever identified or proposed a
modification to them or clarified with CVS whether there were any
additional steps she could take to comply.  See Compl. ¶¶ 66; see
also Dudley v. Hannaford Bros. Co., 333 F.3d 299, 309 (1st Cir.
2003) (stating that the ADA "requires a person with a disability
to request a reasonable and necessary modification" to a policy).
Despite this, Plaintiff argues that the accommodations she
requests here need only be "facially possible" or "suggest the
existence of a particular plausible accommodation" to be
reasonable.  Opp'n to Mot. to Dismiss 24; see also Compl. ¶ 72
(listing specific demands for injunction).  While Plaintiff's

15

demands are certainly possible in the sense that CVS could change
its policies, it seems that Plaintiff is essentially asking for
pharmacists to make no judgments in determining whether to fulfill
prescriptions, and to provide opioids to anyone who has a
"legitimate" prescription, despite the potential for abuse.  It is
hard to conclude that this sort of open-ended policy change would
be feasible given the potential for significant opioid abuse,
particularly when pharmacists have a "corresponding
responsibility," along with doctors "for the proper prescribing
and dispensing of controlled substances."  21 C.F.R. § 1306.04(a).
Given that Plaintiff has not alleged that she has requested
reasonable accommodations from CVS, and that the accommodations
asserted here would likely amount to ending CVS's policy
altogether, she has failed to state a claim against CVS under the
reasonable accommodation theory.

IV.   CONCLUSION

       With all this said, the Court is sympathetic to the plight of
Plaintiff and those similarly situated.   Nevertheless, for the
reasons given above, Defendant's Motion to Dismiss, ECF No. 21, is
GRANTED.   Because amendment to cure the deficiencies in the
complaint would not be futile, the action is DISMISSED with leave

to amend the complaint.  If Plaintiff choses to do so, the amended complaint must be filed within 30 days of this order.


IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date:  September 24, 2021